**PROPERTY ADDRESS**

9362 BUELL STREET
DOWNEY, CA 90241

**LEGAL DESCRIPTION**

LOT 80 OF TRACT NO. 13441, IN THE CITY OF DOWNEY, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA AS PER MAP RECORDED IN BOOK 370, PAGES 5 TO 13 OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY.

# EXHIBIT 1




**This page is part of your document - DO NOT DISCARD**



# 20071237185

**Pages:**
024

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/22/07 AT 08:00AM**

Fee:  79.00
Tax:  0.00
Other: 0.00
Total: 79.00

**Title Company**

## TITLE(S) :





**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**      **Number of AIN's Shown**

-          -



E464713      **THIS FORM IS NOT TO BE DUPLICATED**

# EXHIBIT 1

RECORDING REQUESTED BY:

WHEN RECORDED RETURN TO:
Name:   HOME COMINGS FINANCIAL
Address: NETWORK, INC
City:    ONE MERIDIAN CROSSING
Zip·    MINNEAPOLIS, MN. 55423

SPACE ABOVE FOR RECORDERS USE

Order No.

## TITLE(s) OF DOCUMENT

### DEED OF TRUST

Assessors Identification Number (AIN) \_\_\_\_\_-_____-_____

## EXHIBIT 1

Order: 730-1605971
Doc: CALOSA:2007 01237185

Requested By: Savant023, Printed: 5/31/2016 4:28 PM

UNITED TITLE COMPANY/L.A.

Recording Requested By. Homecomings Financial

Return To    Homecomings Financial
             One Meridian Crossing, Ste  100
             Minneapolis  MN  55423

**Loan Number**  ██████████

05/22/07

**20071237185**

3

Prepared By    Homecomings Financial
               4350 Von Karman Avenue, Suite 100
               Newport Beach, CA 92660

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN ██████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are
also provided in Section 16

**(A) "Security Instrument"** means this document, which is dated  MAY 16TH, 2007
together with all Riders to this document

**(B) "Borrower"** is

ROBERTO ROMO, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

Borrower's address is  9362 BUELL STREET, DOWNEY, CA 90241
                                        Borrower is the trustor under this Security Instrument

**(C) "Lender"** is HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL
    NETWORK, INC )
Lender is a  LIMITED LIABILITY COMPANY
organized and existing under the laws of  DELAWARE

---

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**        Form 3005  1/01
MFCA7770 (09/2005) / 047-392871-1

VMP® -6A(CA) (0207) 01

Page 1 of 15        Initials R R

VMP Mortgage Forms  Inc

Lender's address is  4350 VON KARMAN AVENUE, #100
NEWPORT BEACH, CA 92660
**(D) "Trustee"** is  UNITED TITLE COMPANY

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O  Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS
**(F) "Note"** means the promissory note signed by Borrower and dated MAY 16TH, 2007
The Note states that Borrower owes Lender  SIX HUNDRED THIRTY THREE THOUSAND SEVEN HUNDRED FIFTY AND NO/100                                                        Dollars
(U S $  633,750 00          ) plus interest  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than      JUNE 1ST, 2037
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed by Borrower [check box as applicable]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers
**(M) "Escrow Items"** means those items that are described in Section 3
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

07 1237185

Initials: _MC_

VMP ®-6A(CA) (0207) 01                     Page 2 of 15                     Form 3005  1/01
MFCA7770 (09/2006) / 047-392871-1



**EXHIBIT 1**



**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U S C Section 2601 et seq ) and its implementing regulation, Regulation X (24 C F R Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                     of LOS ANGELES

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

Legal description attached hereto and made a part hereof

SEE EXHIBIT "A"
ATTACHED

Parcel ID Number   6286-014-013                    which currently has the address of
9362 BUELL STREET                                                           [Street]
DOWNEY                              [City], California 90241          [Zip Code]
("Property Address")

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

Initials

-6A(CA) (0207) 01                     Page 3 of 15                          Form 3005  1/01
MFCA7770 (09/2006)  /  047-392871-1

*7*

of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3  Payments due under the Note and this Security Instrument shall be made in U S currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender. (a) cash, (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority  (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3  Such payments shall be applied to each Periodic Payment in the order in which it became due  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10  These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be

VMP -6A(CA) (0207) 01
®
MFCA 7770 (09/2006) / 047-392871-1

Page 4 of 15

Initials _____

Form 3005  1/01

# EXHIBIT 1

in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly  payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Initials _____

**EXHIBIT 1**

*9*

lien  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Loan  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably  Lender may require Borrower to pay, in connection with this Loan, either  (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense  Lender is under no obligation to purchase any particular type or amount of coverage  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance  Lender shall have the right to hold the policies and renewal certificates  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender  Lender may make proof of loss if not made promptly by Borrower  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



07 1237185

*p*

the excess, if any, paid to Borrower  Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim  The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage  If insurance and condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property  Lender's actions can include, but are not limited to  (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable

07 1237185

Initials _____

VMP -6A(CA) (0207) 01          Page 7 of 15          Form 3005  1/01
MFCA7770 (09/2006) / 047-392871-1

**EXHIBIT 1**


attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed  Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance " Further

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials _____

-6A(CA) (0207) 01

MFCA7770 (09/2006)  /  047-392871-1

Page 8 of 15

Form 3005   1/01


**EXHIBIT 1**

*12*

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials _____

B

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender Borrower shall promptly notify Lender of Borrower's change of address If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

07 1237185





EXHIBIT 1

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument. (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

initials 

-6A(CA) (0207) 01                          Page 11 of 15                          Form 3005   1/01

MFCA 7770 (09/2006) / 047-392871-1

# EXHIBIT 1

requires in connection with a notice of transfer of servicing  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

**21. Hazardous Substances.** As used in this Section 21  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances. gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law  Nothing herein shall create any obligation on Lender for an Environmental Cleanup

Initials _____

VMP® -6A(CA) (0207) 01                     Page 12 of 15                     Form 3005  1/01
MFCA7770 (09/2006)  /  047-392871-1

# EXHIBIT 1

NON-UNIFORM COVENANTS Borrower and Lender further covenant and agree as follows

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California

Initials _____

VMP®-6A(CA) (0207) 01                    Page 13 of 15                    Form 3005  1/01
MFCA7770 (09/2006)  /  047-392871-1

07 1237185

17

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses

_____ (Seal)
                                                    -Borrower
ROBERTO ROMO

_____ (Seal)
                                                    -Borrower

_____ (Seal)          _____ (Seal)
          -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
          -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
          -Borrower                                   -Borrower

-6A(CA) (0207) 01                    Page 14 of 15                    Form 3005   1/01
MFCA7770 (09/2006) / 047-392871-1

07 1237185



**EXHIBIT 1**

*18*

**State of California**
**County of** *Los Angeles*                                                    } ss.

On *May 16, 2007*                    before me, *Adriana R. Suarez, Notary Public*

                                                                              personally appeared

*Roberto Romo*

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal

                                                                                        (Seal)

ADRIANA R. SUAREZ
Commission # 1626662
Notary Public - California
Los Angeles County
My Comm. Expires Dec 4, 2009

ADRIANA R. SUAREZ
Commission # 1626662
Notary Public - California
Los Angeles County
My Comm. Expires Dec 4, 2009

07 1237185

Initials

-6A(CA) (0207).01                    Page 15 of 15                    Form 3005  1/01
MFCA7770 (09/2006)  /  047-392871-1

**EXHIBIT 1**

V9

# ADJUSTABLE RATE RIDER
## 1-Month Payment Option, 1-Year Initial Minimum Payment Term

THIS ADJUSTABLE RATE RIDER is made this 16TH day of MAY, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC )

("Lender") of the same date and covering the property described in the Security Instrument and located at

9362 BUELL STREET
DOWNEY, CA 90241

[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

Lender or anyone who takes the Note by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for changes in the interest rate and the monthly payments, as follows:

**2. INTEREST**

**(A) Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid I will initially pay interest at a yearly rate of 7.7500 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of the Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the first day of JULY, 2007 , and on that day every month thereafter. Each date on which my interest rate could change is

**1-MONTH PAYMENT OPTION, 1-YEAR INITIAL MINIMUM PAYMENT TERM MULTISTATE ADJUSTABLE RATE RIDER**

Page 1 of 6

VMP Mortgage Solutions, Inc.

Initials: R R

)402).01

07 1237185

20

called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. Although the interest rate may change monthly, my monthly payment will be recalculated in accordance with Section 3

**(C) Interest Rate Limit**
My interest rate will never be greater than        9 9500                %.

**(D) Index**
Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index  The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (h.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing  by 12.  The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(E) Calculation of Interest Rate Changes**
Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding  TWO AND SEVEN TENTHS
percentage point(s) (    2 7000                  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

## 3. PAYMENTS
**(A) Time and Place of Payments**
I will make a payment every month.

I will make my monthly payments on the first day of each month beginning on JULY 1ST, 2007          . Each of these dates is called a "Payment Due Date." I will make these payments every month until I have paid all the Principal and interest and any other charges that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 1ST, 2037
        , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 4350 VON KARMAN AVENUE, #100, NEWPORT BEACH, CA 92660
or at a different place if required by the Note Holder.

**(B) Minimum Payment; Amount of My Initial Monthly Payments**
My "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment, which the Note Holder will determine in accordance with this Section 3(B), or Section 3(D), 3(F) or 3(G), below, as applicable.

Initials

0402).01                        Page 2 of 6
MFCD8629/ (10/2008) / 047 392871 1

07 1237185



**EXHIBIT 1**

21

Each of my initial Minimum Payments will be in the amount of U.S. $ 2,342.46 , until a new Minimum Payment is required as provided below. If my Minimum Payment is not sufficient to cover the interest due under the Note, the difference will be added to my Principal amount as provided in Section 3(E) below. My initial Minimum Payment may not be sufficient to cover the interest due.

**(C) Payment Change Dates**

My Minimum Payment may change as required by Section 3(D) below beginning on the first day of JULY, 2008 , and on that day every 12th month thereafter through my 109th Payment Due Date. Beginning with my 121st Payment Due Date, my Minimum Payment may change monthly thereafter. Each of these dates is called a "Payment Change Date." My Minimum Payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay at least the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below

**(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." For the Payment Change Dates occurring on the 13th, 25th, 37th, 49th, 61st, 73rd, 85th, 97th, and 109th Payment Due Dates, the Note Holder also will multiply the amount of my last Minimum Payment due before the Payment Change Date by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) below requires me to pay a different amount, the amount of my new Minimum Payment that will be effective on each of the 13th, 25th, 37th, 49th, 61st, 73rd, 85th, 97th, and 109th Payment Change Dates will be the lesser of the Full Payment or the Limited Payment. The amount of my new Minimum Payment that will be effective on each of the Payment Change Dates beginning with the 121st Payment Due Date and continuing monthly thereafter will be the Full Payment, as provided in Section 3(G) below.

The Minimum Payment applies only to the Principal and interest payment and does not apply to any escrow payments the Note Holder may require under the Security Instrument.

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. The Note Holder also will add interest on the amount of this difference to my unpaid Principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above. For each month that my monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A)

Initials: _____

███████.0402).01                    Page 3 of 6
MFCD8297 (10/2006) / 047 392871-1


**EXHIBIT 1**

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal may never exceed a maximum amount equal to 115% of the Principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid Principal under Section 3(E) above could cause my unpaid Principal to exceed that maximum amount. In that event and unless Section 3(G) requires me to pay a different amount, on the Payment Due Date that my paying my monthly payment would cause me to exceed that limit and continuing each monthly Payment Due Date thereafter through the 120th Payment Due Date, I will instead pay a new monthly payment in an amount not less than the amount that would pay the interest portion of the monthly payment at the interest rate effective during the month preceding the applicable Payment Due Date. This amount will be my new Minimum Payment. This means that my Minimum Payment may change monthly. This method of calculating my new Minimum Payment amount will remain in effect until the 121st Payment Due Date.

**(G) Required Full Payment**

Beginning on the Payment Change Date that occurs on the 121st Payment Due Date and continuing monthly thereafter, I will pay the Full Payment as my Minimum Payment until my monthly payment changes again.

**(H) Payment Options**

Each month the Note Holder may provide me with up to three additional payment options (in addition to the Minimum Payment) that are equal to or greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option. This payment option will not be available beginning with the 121st Payment Due Date.

(ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (including all Principal and interest) on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month. This Payment Option is calculated on the assumption that the current interest rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change in accordance with Section 2(B) above.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (including all Principal and interest) within a fifteen (15) year period from the first payment due date in substantially equal installments at the interest rate effective during the preceding month. This Payment Option is calculated on the assumption that the current rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change in accordance with Section 2(B) above.

Payment Options will only be available if they are equal to or greater than the Minimum Payment.

**(I) Failure to Make Adjustments**

If for any reason the Note Holder fails to make an adjustment to the interest rate or payment amount as described herein, regardless of any notice requirement, I agree the Note

Initials: 

(0402).01                           Page 4 of 6

MFCD6297 (10/2006) / 047 392871-1

07 1237185



Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold the Note Holder responsible for any damages to me that may result from the Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies that I may have paid to partial Prepayment of unpaid Principal.

## 4. NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials. _____

0402).01                    Page 5 of 6

MFCD6829 (10/2006) / 047-3928711



# EXHIBIT 1

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)                              _____ (Seal)
                      -Borrower                                                    -Borrower
ROBERTO ROMO

_____ (Seal)                              _____ (Seal)
                      -Borrower                                                    -Borrower

_____ (Seal)                              _____ (Seal)
                      -Borrower                                                    -Borrower

_____ (Seal)                              _____ (Seal)
                      -Borrower                                                    -Borrower

█████ (0402).01                              Page 6 of 6
MFCU0829 / (10/2008) / 047 392871-1

07 1237185

**EXHIBIT 1**

ORDER NO  10705101-5

**EXHIBIT "A"**

LOT 80 OF TRACT NO. 13441, IN THE CITY OF DOWNEY, COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK
370, PAGES 5 TO 13 OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

07 1237185

−3−

**EXHIBIT 1**

# EXHIBIT 2

# ADJUSTABLE RATE NOTE
## 1-Month Payment Option, 1-Year Initial Minimum Payment Term

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

| MAY 16TH, 2007 | DOWNEY | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

9362 BUELL STREET, DOWNEY, CA 90241
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 633,750.00 (this amount, including any increase to this amount under the terms of this Note, is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided in this Note, but can never exceed the maximum amount specified in Section 3(F) of this Note. Lender is HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.) . I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will initially pay interest at a yearly rate of 7.7500 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first day of JULY, 2007 , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. Although the interest rate may change monthly, my monthly payment will be recalculated in accordance with Section 3.

### (C) Interest Rate Limit

My interest rate will never be greater than 9.9500 %.

---

1-MONTH PAYMENT OPTION, 1-YEAR INITIAL MINIMUM PAYMENT TERM MULTISTATE ADJUSTABLE RATE NOTE
MFCD8296 (10/2006) / 047-392871-1
7754226 (0005)

Page 1 of 6

VMP Mortgage Solutions, Inc.

Initials: 

# EXHIBIT 2

### (D) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (h.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (E) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO AND SEVEN TENTHS percentage point(s) ( 2.7000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the first day of each month beginning on  JULY 1ST, 2007 . Each of these dates is called a "Payment Due Date." I will make these payments every month until I have paid all the Principal and interest and any other charges that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  JUNE 1ST, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  4350 VON KARMAN AVENUE, #100, NEWPORT BEACH, CA 92660 or at a different place if required by the Note Holder.

### (B) Minimum Payment; Amount of My Initial Monthly Payments

My "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment, which the Note Holder will determine in accordance with this Section 3(B), or Section 3(D), 3(F) or 3(G), below, as applicable.

Each of my initial Minimum Payments will be in the amount of U.S. $  2,342.46 until a new Minimum Payment is required as provided below. If my Minimum Payment is not sufficient to cover the interest due under this Note, the difference will be added to my Principal amount as provided in Section 3(E) below. My initial Minimum Payment may not be sufficient to cover the interest due.

### (C) Payment Change Dates

My Minimum Payment may change as required by Section 3(D) below beginning on the first day of JULY, 2008 , and on that day every 12th month thereafter through my 109th Payment Due Date. Beginning with my 121st Payment Due Date, my Minimum Payment may change monthly thereafter. Each of these dates is called a "Payment Change Date." My Minimum Payment also will change at any time Section 3(F) below requires me to pay a different amount.

I will pay at least the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

## EXHIBIT 2

**(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." For the Payment Change Dates occurring on the 13th, 25th, 37th, 49th, 61st, 73rd, 85th, 97th, and 109th Payment Due Dates, the Note Holder also will multiply the amount of my last Minimum Payment due before the Payment Change Date by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) below requires me to pay a different amount, the amount of my new Minimum Payment that will be effective on each of the 13th, 25th, 37th, 49th, 61st, 73rd, 85th, 97th, and 109th Payment Change Dates will be the lesser of the Full Payment or the Limited Payment. The amount of my new Minimum Payment that will be effective on each of the Payment Change Dates beginning with the 121st Payment Due Date and continuing monthly thereafter will be the Full Payment, as provided in Section 3(G) below.

The Minimum Payment applies only to the Principal and interest payment and does not apply to any escrow payments the Note Holder may require under the Security Instrument (as defined in Section 11 of this Note, below).

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. The Note Holder also will add interest on the amount of this difference to my unpaid Principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above. For each month that my monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to 115% of the Principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid Principal under Section 3(E) above could cause my unpaid Principal to exceed that maximum amount. In that event and unless Section 3(G) requires me to pay a different amount, on the Payment Due Date that my paying my monthly payment would cause me to exceed that limit and continuing each monthly Payment Due Date thereafter through the 120th Payment Due Date, I will instead pay a new monthly payment in an amount not less than the amount that would pay the interest portion of the monthly payment at the interest rate effective during the month preceding the applicable Payment Due Date. This amount will be my new Minimum Payment. This means that my Minimum Payment may change monthly. This method of calculating my new Minimum Payment amount will remain in effect until the 121st Payment Due Date.

**(G) Required Full Payment**

Beginning on the Payment Change Date that occurs on the 121st Payment Due Date and continuing monthly thereafter, I will pay the Full Payment as my Minimum Payment until my payment changes again.

**(H) Payment Options**

Each month the Note Holder may provide me with up to three additional payment options (in addition to the Minimum Payment) that are equal to or greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option. This payment option will not be available beginning with the 121st Payment Due Date.



**EXHIBIT 2**

(ii)  **Fully Amortized Payment:** the amount necessary to pay the loan off (including all Principal and interest) on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month. This Payment Option is calculated on the assumption that the current interest rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change in accordance with Section 2(B) above.

(iii)  **15 Year Amortized Payment:** the amount necessary to pay the loan off (including all Principal and interest) within a fifteen (15) year period from the first payment due date in substantially equal installments at the interest rate effective during the preceding month. This Payment Option is calculated on the assumption that the current rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change in accordance with Section 2(B) above.

Payment Options will only be available if they are equal to or greater than the Minimum Payment.

**(I) Failure to Make Adjustments**

If for any reason the Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree the Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold the Note Holder responsible for any damages to me that may result from the Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies that I may have paid to partial Prepayment of unpaid Principal.

**4. NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received at least the full amount of any Minimum Payment by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.0000  % of my overdue Minimum Payment. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay at least the full amount of each Minimum Payment on the date it is due, I will be in default.

**EXHIBIT 2**

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

# EXHIBIT 2

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)　　　_____ (Seal)
　　　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　　　-Borrower
ROBERTO ROMO


_____ (Seal)　　　_____ (Seal)
　　　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　　　-Borrower


_____ (Seal)　　　_____ (Seal)
　　　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　　　-Borrower

Without Recourse
Pay to the Order of  RESIDENTIAL FUNDING COMPANY, LLC

_____ (Seal)　　　_____ (Seal)
　　　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　　　-Borrower
Dorothy Okech
Assistant Secretary
Homecomings Financial, LLC
A Delaware Corporation

*[Sign Original Only]*

7754226 (0005)
MFCD6296 (10/2006) / 047-392871-1　　　　　　　　　　　Page 5 of 6

# EXHIBIT 2

ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS
ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE

POOL:        0        LOAN ID:

NOTE DATE:    5/16/2007    LOAN AMOUNT:    $633,750.00

BORROWER NAME:  ROBERTO  ROMO

PROPERTY ADDRESS:    9362 BUELL STREET, DOWNEY, CA  90241

PAY TO THE ORDER OF


WITHOUT RECOURSE

Residential Funding Company, LLC

By:

Name: Amy Nelson

Title: Assistant Vice President

Residential Funding Company, LLC


**EXHIBIT 2**

# EXHIBIT 3



**This page is part of your document - DO NOT DISCARD**



# 20101764880

**Pages:
0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/02/10 AT 08:00AM**

| | |
|---|---:|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**THIS FORM IS NOT TO BE DUPLICATED**    t35

E145797

# EXHIBIT 3

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

ASSIGNMENT PREP
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706



12/02/2010

*20101764880*

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Los Angeles, California
SELLER'S SERVICING #: ████████ "ROMO"
OLD SERVICING #:  FC

MERS #: ████████ VRU #: 1-888-679-6377

Prepared By:   Rhonda Gall,  AURORA LOAN SERVICES 2617 COLLEGE PARK, PO BOX 1706, SCOTTSBLUFF, NE 69363-1706
308-635-3500

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR
HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.) ITS SUCCESSORS OR
ASSIGNS hereby grants, assigns and tranfers to AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK,
SCOTTSBLUFF, NE 69361 all beneficial interest under that certain Deed of Trust dated 05/16/2007 , in the amount
of $633,750.00, executed by ROBERTO ROMO, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY to
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR HOMECOMINGS FINANCIAL,
LLC F/K/A HOMECOMINGS FINANCIAL NETWORK, INC. and Recorded:  05/22/2007  as Instrument No.:
20071237185 in the County of Los Angeles, State of California

 Therein described or referred to, in said Deed of Trust, the money due and to become due thereon with interest, and
all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR HOMECOMINGS FINANCIAL,
LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.) ITS SUCCESSORS OR ASSIGNS
On November 12th, 2010

_____
JAN WALSH, Vice-President



# EXHIBIT 3

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Nebraska
COUNTY OF Scotts Bluff

ON November 12th, 2010, before me, IRENE GUERRERO, a Notary Public in and for the County of Scotts Bluff
County, State of Nebraska, personally appeared JAN WALSH, Vice-President, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and
that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal,

IRENE GUERRERO
Notary Expires: 09/14/2013

GENERAL NOTARY - State of Nebraska
IRENE GUERRERO
My Comm. Exp. Sept. 14, 2013

(This area for notarial seal)

# EXHIBIT 3

**This page is part of your document - DO NOT DISCARD**



# 20141271172



**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/25/14 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**THIS FORM IS NOT TO BE DUPLICATED**                    t09

E364471

# EXHIBIT 3

11/25/2014

**Recording Request By:**

Title Order #  12-02422046-T

*20141271172*

**When Recorded Mail To:**
VERIPRISE PROCESSING SOLUTIONS
750 Hwy 121 BYP STE 100
Lewisville, TX 75067
TS # CA1400262723

---

| | |
|---|---|
| **APN:**   6286-014-013 | |
| **TSG #:**   12-02422046-T | **MERS PHONE: 1-888-679-6377** |

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned company hereby grants, assigns, and transfers to
**LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-15N,**
**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE**
all beneficial interest under that certain Deed of Trust dated: **05/16/2007** executed by **ROBERTO ROMO, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY** as Trustor(s), to **UNITED TITLE COMPANY**, as Trustee, and recorded on **05/22/2007** as Instrument No. **20071237185,** in Book **NA**, Page **NA** in the office of the County Recorder of **Los Angeles** County, **California** secured by said Deed of Trust and also all rights accrued or to accrued under said Deed of Trust.

Property Address: **9362 BUELL STREET, DOWNEY, CA 90241**

Date : ___11-22-14___

**AURORA LOAN SERVICES LLC BY IT'S ATTORNEY-IN-FACT NATIONSTAR MORTGAGE LLC**

Signature : _____ 11-22-14

Name & Title : ___Grady George , AVP___

State Of: **Texas**
County Of: Denton

Before me, __Robin L. Porter__ on this day personally appeared ___Grady George___, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that this person executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 22 day of November A.D, 2014.

_____ (Notary Seal)

ROBIN L. PORTER
Notary Public, State of Texas
My Commission Expires
April 01, 2017

## EXHIBIT 3

15F



**This page is part of your document - DO NOT DISCARD**



# 20161427698

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**11/15/16 AT 08:00AM**



**Pages:
0003**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



*E464443*

**THIS FORM IS NOT TO BE DUPLICATED**        160360759 DL

# EXHIBIT 3

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

Recording Requested By:
Nationstar Mortgage

When Recorded Return To:

DOCUMENT ADMINISTRATION
Nationstar Mortgage
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

### Corrective
### CORPORATE ASSIGNMENT OF DEED OF TRUST

Los Angeles, California
SELLER'S SERVICING # ▇▇▇▇▇ "ROMO"

For Value Received, AURORA LOAN SERVICES LLC BY NATIONSTAR MORTGAGE LLC, ITS
ATTORNEY-IN-FACT hereby grants, assigns and transfers to U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE
FOR LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-15N at 425 WALNUT ST,
CINCINNATI, OH 45202 all its interest under that certain Deed of Trust dated 05/16/2007 , in the amount of
$633,750.00, executed by ROBERTO ROMO, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY to
MORTGAGE ELECTRONIC REGISTRATION SYTEMS, INC. AS NOMINEE FOR HOMECOMINGS FINANCIAL, LLC
(F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.) and Recorded: 05/22/2007 as Instrument No.:
20071237185 in the County of Los Angeles, State of California.

Legal: N/A

**CORRECTIVE: THIS ASSIGNMENT IS BEING RECORDED TO CORRECT THE ASSIGNEE IN THE
ASSIGNMENT RECORDED 11/05/2014 INSTRUMENT#: 20141271172**

In witness whereof this instrument is executed.

AURORA LOAN SERVICES LLC BY NATIONSTAR MORTGAGE LLC, ITS ATTORNEY-IN-FACT
On November 7th, 2016

COLLEEN BARNETT, Assistant Secretary

THIS INSTRUMENT IS RECORDED AT THE
REQUEST OF SERVICELINK AS AN
ACCOMMODATION ONLY. IT HAS NOT BEEN
EXAMINED AS TO ITS EXECUTION OR AS
TO ITS EFFECTS UPON TITLE.

# EXHIBIT 3

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Texas
COUNTY OF Dallas

On November 7th, 2016, before me, TIM JACKSON, a Notary Public in and for Dallas in the State of Texas, personally appeared COLLEEN BARNETT, Assistant Secretary, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

TIM JACKSON
Notary Expires: 12/03/2019 #130457575

TIM JACKSON
Notary Public, State of Texas
Comm. Expires 12-03-2019
Notary ID 13045757-5

(This area for notarial seal)

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**EXHIBIT 3**

# EXHIBIT 4

Form odspb–odspab VAN–21)
Rev. 12/09

# United States Bankruptcy Court
# Central District Of California

**255 East Temple Street, Los Angeles, CA 90012**

## ORDER AND NOTICE OF DISMISSAL FOR
## FAILURE TO FILE SCHEDULES, STATEMENTS AND/OR PLAN

**DEBTOR INFORMATION:**          **BANKRUPTCY NO.**  2:10–bk–54014–VZ
Roberto Romo

       **CHAPTER**  13

**Last four digits of Social–Security or Individual Taxpayer–Identification (ITIN) No(s)., (if any):**  xxx–xx–0922
**Employer Tax–Identification (EIN) No(s).(if any):**  N/A
**Debtor Dismissal Date:** 11/2/10

**Address:**
9362 Buell Street
Downey, CA 90241

It appearing that the debtor(s) in the above–captioned case has failed to file all the documents required under F.R.B.P. 1007 or 3015(b) within 14 days after the filing of the petition and no motion for an order extending the time to file the required documents has been timely filed in accordance with F.R.B.P. 1007(a)(5) or 3015(b),

     IT IS HEREBY ORDERED THAT:

1)     The case is dismissed.

2)     The automatic stay is vacated.

3)     Any discharge entered in this case is vacated.

4)     The Court retains jurisdiction on all issues arising under Bankrupcty Code § 110, 329 and 362.

With a 180 Day Restriction against being a debtor, 11 U.S.C.

           By the Court,

Dated: November 2, 2010

           **Kathleen J. Campbell**
           Clerk of Court

(Form odspb–odspab VAN–21) Rev. 12/09              **11 / LB2**

# EXHIBIT 4

# EXHIBIT 5

# United States Bankruptcy Court
# Central District of California

**255 East Temple Street, Los Angeles, CA 90012**

## ORDER AND NOTICE OF DISMISSAL FOR FAILURE TO APPEAR
## AT 341(a) MEETING OF CREDITORS

**DEBTOR INFORMATION:**
Roberto Romo

**BANKRUPTCY NO.** 2:16–bk–23678–BB

**CHAPTER** 7

**Last four digits of Social–Security or Individual Taxpayer–Identification (ITIN) No(s)., (if any):** xxx–xx–0922
**Employer Tax–Identification (EIN) No(s).(if any):** N/A
**Debtor Dismissal Date:** 12/29/16

**Address:**
9362 Buell Street
Downey, CA 90241

The above debtor(s) has **FAILED TO APPEAR** for examination at the initial Section 341(a) meeting of creditors and any continuance thereof:

It is ordered:

1)    The case is dismissed.

2)    The automatic stay is vacated.

3)    Any discharge entered in this case is vacated.

4)    The Court retains jurisdiction on all issues arising under Bankruptcy Code § 110, 329 and 362.

Dated: December 29, 2016

For The Court,

**Kathleen J. Campbell**
Clerk of Court

(Form van23b–odmwab VAN–23) Rev. 11/09

**20 / SMZ**

# EXHIBIT 5

# EXHIBIT 6

FORM CACB (od13fr VAN–158)
(01/2010)

# United States Bankruptcy Court
## Central District of California

**255 East Temple Street, Los Angeles, CA 90012**

## ORDER AND NOTICE OF DISMISSAL
## ARISING FROM CHAPTER 13 TRUSTEE'S MOTION TO DISMISS
## [11 U.S.C. §§ 1307 AND 109(g)]

**DEBTOR INFORMATION:**
Roberto Romo Sr.

**BANKRUPTCY NO.**  2:17–bk–11508–VZ

**CHAPTER**  13

**Last four digits of Social–Security or Individual Taxpayer–Identification (ITIN) No(s)., (if any):**  xxx–xx–0922
**Employer Tax–Identification (EIN) No(s).(if any):**  N/A
**Debtor Dismissal Date:** 3/21/17

**Address:**
9362 Buell Street
Downey, CA 90241

Pursuant to the Chapter 13 Trustee's motion to dismiss ("Motion") and supporting declaration in this case,

IT IS ORDERED that the Motion is granted, and

(1)             debtor's bankruptcy case is dismissed;

(2)             the court retains jurisdiction on all issues arising under Bankruptcy Code Sections 110, 329 and 362; and

(3)             pursuant to Bankruptcy Code Section 109(g), debtor is prohibited from filing any new bankruptcy petition within 180 days of the date of entry of this order.

Dated: March 21, 2017

BY THE COURT,

**Vincent P. Zurzolo**
United States Bankruptcy Judge

# EXHIBIT 6

EXHIBIT 7

TO: BARRET FRAPPIER TREDER AND WEISS LLP
FAX: (972) 661-7800
PHONE: (866) 795-1852

FROM: CONSUELO ROMO
DATE: 11/1/17
PAGES:

Urgent     For review     Please comment     Please reply     Please recycle

......................................................................

*ATTENTION BANKRUPTCY DEPARTMENT

PLEASE NOTE: _____ CONSUELO ROMO

FILED BANKRUPTCY CHAPTER: _____ 7

CASE # 17-bk-23483-BB

FOR THE PROPERTY LOCATED AT:

9362 Buell St. Downey CA 90241

TRUSTE #: 6074553 _____ SALE DATE 11/1/17 _____ TIME 11:00 am

NOTES:

SEE ATTACHED GRANT DEED

**EXHIBIT 7**

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

Central District of California

Case number (if known): 17-bk-23483-BB

Chapter you are filing under:
- ☑ Chapter 7
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13

COPY

☐ Check if this is an amended filing

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy

12/15

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1: Identify Yourself

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name** Write the name that is on your government-issued picture identification (for example, your driver's license or passport). Bring your picture identification to your meeting with the trustee. | Consuelo First name<br><br>Middle name<br>Romo Last name<br><br>Suffix (Sr., Jr., II, III) | First name<br><br>Middle name<br><br>Last name<br><br>Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years** Include your married or maiden names. | First name<br><br>Middle name<br><br>Last name<br><br>First name<br><br>Middle name<br><br>Last name | First name<br><br>Middle name<br><br>Last name<br><br>First name<br><br>Middle name<br><br>Last name |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | XXX – XX – ███<br>OR<br>9 xx – xx – ___ ___ ___ ___ | XXX – XX – ___ ___ ___ ___<br>OR<br>9 xx – xx – ___ ___ ___ ___ |

**EXHIBIT 7**

RECORDING REQUESTED BY:

MAIL TAX STATEMENTS AND
WHEN RECORDED MAIL TO:

Roberto Romo
9362 Buell St.
Downey, CA. 90241

08/23/2017

*20170956423*

Order No.:
Escrow No.:
APN:6286-014-013

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR (S) DECLARE(S):

DOCUMENTARY TRANSFER TAX IS $___0.00_____

___X__ Computed on full value of property conveyed, or

_____ Computed on full value less liens and encumbrances remaining at time of sale.

_____ Unincorporated area _____ City of ___Downey_____

For valuable consideration, receipt of which is hereby acknowledged,

Roberto Romo, a married man as his sole and separated property

hereby GRANT(S) to Roberto Romo a married man as his sole and separated property and Consuelo Romo, a single woman

the following described real property situated in the County of _____Los Angeles_____, State of California, more particularly described as follows:

Lot 80 of Tract No. 13441, in the City of Downey, County of Los Angeles, State of California, as per map recorded in Book 370, pages 5 to 13 of maps in the office of the county recorded of said county

"This is a bonafide gift and the grantor received nothing in return, R & T 11911."

Date: _____08/23//2017_____

_____
Roberto Romo

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

STATE OF CALIFORNIA

COUNTY OF _Los Angeles_ ) ss.
)

On _08/23/2017_ before me, _Mayra Pineda_____, Notary Public, personally

appeared _Roberto Romo_____.

who proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

MAYRA PINEDA
COMM. #2072279
NOTARY PUBLIC•CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires JUL 18, 2018

MAIL TAX STATEMENTS AS DIRECTED ABOVE

**EXHIBIT 7**

# EXHIBIT 8

## DECLARATION OF _____

I, __Benjamin Garcia__, declare as follows:

1.    I have been a real estate broker/agent, duly licensed by the State of California, and I have been actively involved in real property sales transactions in the State of California since 2005. I am currently associated with Pulse Realty _____ located at Irvine, CA _____. My responsibilities include the inspection and valuation of residential real property listed for sale and the review and analysis of data concerning the sale and listing prices of similar properties. During my years as a real estate broker/agent, I have performed more than _5000_ property valuations of residential real property in the State of California based upon visual inspection and comparable sales and listing information.

2.    On 11/22/17 _____, at the request of Nationstar Mortgage LLC I performed a property value analysis of a single family residence located at 9362 Buell Street, Downey, CA 90241 and prepared a written report of my analysis, a true and correct copy of which is attached hereto as Exhibit "1" and incorporated herein by this reference. I have no present or future interest in the property, which was the subject of my analysis and report, and I have no personal interest in or bias toward the parties involved in this matter. Neither my employment nor my compensation is contingent upon the reporting of any pre-determined value of the property, the attainment of any particular result or the outcome of the matter presently before the court.

3.    I personally performed an exterior inspection of the subject property. I also examined and considered secondary sources of information concerning the subject property and the comparable properties described in my written report. Based upon these inspections and upon the information

1

**EXHIBIT 8**

contained in my written report, I estimate that the subject property has a fair market value of $680,000.00 as of November 22, 2017.

4.      The foregoing facts are known to me personally, and if called as a witness, I would testify competently thereto.

I declare under penalty of perjury under the laws of the United States that the foregoing facts are true and correct.

Executed this __2nd__ day of __January__, 2018 at __IRVINE__, California.

X B—

BENJAMIN GARCIA

(print name)

2

**EXHIBIT 8**

ASSURANT®

# Broker Price Opinion

☒ Exterior Inspection
☐ Interior Inspection

| | | | |
|---|---|---|---|
| Property Address: | 9362 Buell St | Vendor ID: | 4380027 |
| City, State, Zip: | Downey, CA 90241 | Deal Name: | |
| Loan Number: | ▮▮▮▮▮▮▮ | Inspection Date: | 11/22/2017 |
| 2nd Loan / Client #: | | Subject APN: | 6286014013 |

| Property Occupancy Status | Owner | Does the Property Appear Secure? | Yes | Est. Monthly Rent | $3,000 | Sold in the last 12 Months? | No |
|---|---|---|---|---|---|---|---|

| Currently Listed | Currently List Broker | List Broker Contact # | Initial List Price | Initial List Date | Current List Price | DOM / CDOM | | Sale Price: | |
|---|---|---|---|---|---|---|---|---|---|
| No | | | | | | | | Sale Date: | |

| Is the Subject Listing Currently Pending? | | Date of Contract | | CDOM to Contract | |
|---|---|---|---|---|---|

**Subject Property Comments / External Influences**

Conforming neighborhood with homes of similar style and age. Neighborhood appears maintained and near school, parks.

| | Subject | Sold Comp 1 | Sold Comp 2 | Sold Comp 3 | List Comp 1 | List Comp 2 | List Comp 3 |
|---|---|---|---|---|---|---|---|
| |  |  |  |  |  |  |  |
| Address | 9362 Buell St Downey, CA 90241 | 9442 Pellet St Downey, CA 90241 | 10526 Pico Vista Rd Downey, CA 90241 | 10244 Woodruff Ave Downey, CA 90241 | 10808 Casanes Ave Downey, CA 90241 | 9024 Farm St Downey, CA 90241 | 9530 Buell Downey, CA 90241 |
| Proximity | | 0.28 Miles | 0.41 Miles | 0.49 Miles | 0.12 Miles | 0.6 Miles | 0.19 Miles |
| Sale/List Price | | $665,000 | $670,000 | $719,000 | $679,900 | $699,900 | $680,000 |
| Sale Date | | 6/7/2017 | 7/5/2017 | 7/10/2017 | active | active | active |
| Price Per Sq.ft. | $335.80 | $336.20 | $347.15 | $324.02 | $341.66 | $347.52 | $303.57 |
| Initial List Price | | $649,000 | $695,000 | $749,995 | $679,900 | $729,900 | $680,000 |
| Initial List Date | | 4/13/2017 | 1/18/2017 | 5/2/2017 | 8/1/2017 | 10/17/2017 | 9/19/2017 |
| Current/Final List | | $649,000 | $685,000 | $749,995 | $679,900 | $699,900 | $680,000 |
| DOM/CDOM | | 2 / 2 | 89 / 89 | 15 / 15 | 113 / 113 | 36 / 36 | 38 / 38 |
| Sales Type | | Fair Market | Fair Market | Fair Market | Fair Market | Fair Market | Fair Market |
| Finance Incentives | | 0 | 0 | 0 | 0 | 0 | 0 |
| Living Area | 2025 | 1978 | 1930 | 2219 | 1990 | 2014 | 2240 |
| #Rooms/Bed/Bath 1 | 9 / 4 / 2 | 7 / 3 / 3 | 6 / 3 / 2 | 7 / 3 / 3 | 7 / 4 / 2 | 7 / 3 / 3 | 8 / 4 / 3 |
| Year Built | 1950 | 1953 | 1955 | 1952 | 1951 | 1950 | 1950 |
| Bsmnt SF/% Finished | | | | | | | |
| Lot Size | 0.18ac | 0.14ac | 0.17ac | 0.18ac | 0.14ac | 0.17ac | 0.14ac |
| Property Type | SF Detach | SF Detach | SF Detach | SF Detach | SF Detach | SF Detach | SF Detach |
| Style / Quality | Single Story / Q4 | Single Story / Q4 | Single Story / Q4 | Single Story / Q4 | Single Story / Q4 | Single Story / Q4 | Single Story / Q4 |
| # of Units | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Condition | C3 | C3 | C3 | C3 | C3 | C3 | C3 |
| Pool/Spa | In Ground | No / No | Yes / No | No / No | No / No | No / No | No / No |
| View | Residential | Residential | Residential | Residential | Residential | Residential | Residential |
| Porch/Patio/Deck | No / Yes / No | No / Yes / No | No / Yes / No | No / Yes / No | No / Yes / No | No / Yes / No | No / Yes / No |
| Fireplace | Yes | Yes | Yes | Yes | Yes | Yes | Yes |
| Garage | 1 Attached | 2 Attached | 2 Detached | 2 Attached | 2 Attached | 3 Attached | 2 Attached |
| Other Features | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| HOA Fees | 0/mo | 0/yr | 0/yr | 0/yr | 0/yr | 0/yr | 0/yr |
| Subdivision | non sub | non sub | non sub | non sub | non sub | non sub | non sub |
| School District | Downey Unified | Downey Unified | Downey Unified | Downey Unified | Downey Unified | Downey Unified | Downey Unified |
| Data Source - ID | County Tax - | MLS - PW17078708 | MLS - PW17011904 | MLS - PW17095033 | MLS - dw17176057 | MLS - DW17237774 | MLS - dw1721677 |

| Market Time 30-90 days | As-Is Price Estimate | As-Repaired Price Estimate | Land Only Price |
|---|---|---|---|
| Anticipated Sale Price | $680,000 | $680,000 | $125,000 |
| Recommended List Price | $680,000 | $680,000 | |
| Recommended Sales Strategy: | ☒ As - Is | ☐ Repaired | |

# EXHIBIT 8



| | Address | City | BR | BA | Lot Size | Sale/List Date | Year Built | Sale/List Price | Distance |
|---|---|---|---|---|---|---|---|---|---|
| • | 9362 Buell St | Downey | 4 | 2 | 0.18ac | | 1950 | | |
| 1 | 9442 Pellet St | Downey | 3 | 3 | 0.14ac | 6/7/2017 | 1953 | $665,000 | 0.28 Miles |
| 2 | 10526 Pico Vista Rd | Downey | 3 | 2 | 0.17ac | 7/5/2017 | 1955 | $670,000 | 0.41 Miles |
| 3 | 10244 Woodruff Ave | Downey | 3 | 3 | 0.18ac | 7/10/2017 | 1952 | $719,000 | 0.49 Miles |
| 1 | 10808 Casanes Ave | Downey | 4 | 2 | 0.14ac | 8/1/2017 | 1951 | $679,900 | 0.12 Miles |
| 2 | 9024 Farm St | Downey | 3 | 3 | 0.17ac | 10/17/2017 | 1950 | $699,900 | 0.6 Miles |
| 3 | 9530 Buell | Downey | 4 | 3 | 0.14ac | 9/19/2017 | 1950 | $680,000 | 0.19 Miles |

**Neighborhood Data:**

Location Type: Suburban    Market Trend: Appreciating    Economic Trend: Stable    Neighborhood Trend: Stable

Housing Supply: Stable    Crime/Vandalism: Low Risk    REO Driven? No    Avg Age of Home: 63

Neighborhood Pride of Ownership: Average    Avg Marketing Time of Comparable Listings: Under 3 Mos.

Price Range: $665,000 to $719,000    Median Price: $692,000    Predominate Value: $684,666    Average DOM: 34

Number of units for rent:    Number of units in complex for sale:

Negative Neighborhood Factors that will detract from the subject:

None Noted

Neighborhood Comments:

Conforming neighborhood with homes of similar style and age. Neighborhood appears maintained and near school, parks, and recreational facilities.

**Marketability of Subject:**

Most Likely Buyer: traditional    Types of Financing the Subject will NOT qualify for: n/a

Will this be a problem for resale? If yes, please explain:

None Noted

# EXHIBIT 8

| Comparables | |
|---|---|
| Sale 1 Comments | 3 Bedroom 3 Bath home features a large living room with fireplace with adjacent dining area |
| Sale 2 Comments | desirable neighborhoods walking distance to stonewood mall and San Gabriel's park ,Featuring wide streets quiet neighborhood and minutes away from major fwys |
| Sale 3 Comments | Originally built in 1952, this 2,210 sq ft home sits on a 8,002 sq ft lot. It features hardwood floors and plantation shutters throughout. There are 3 bedrooms and 3 baths |
| List 1 Comments | Close to schools , shopping and freeway access . |
| List 2 Comments | 3 bedrooms, 2 1/2 bathrooms, large Family room with Brick Fireplace and wet bar with refrigerator, sink and shelves, spacious kitchen |
| List 3 Comments | Travertine floors, central air and heat with the bonus room that can be used as a 5th bedroom or office, extra large bedrooms |

**Comments:**

Service Provider Comments:

Located in area of Maintained homes, subject conforms to area. No adverse conditions were noted at time of inspection based on exterior drive by Central location, close to schools, shopping, and transportation. Located in area of maintained homes subject conforms. The subject is in overall good condition with no items of deferred maintenance noted. The comparable sales and listings are all suburban, detached, single family homes like the subject and are good indicators of value for the subject property.

Vendor Comments:

Address verified via google maps.

| | | | |
|---|---|---|---|
| Service Provider Signature | /s/ BENJAMIN GARCIA | BPO Effective Date | 11/22/2017 |
| Service Provider Company | Pulse Realty & Investments | Service Provider Lic. Num. | 01724215 |

# EXHIBIT 8

**Repairs**

Recommended Repairs would bring the subject to: $680,000

| Internal Repairs | Comment | Total |
|---|---|---|
| Paint | | $0 |
| Walls/Ceiling | | $0 |
| Carpet/Floors | | $0 |
| Cabinets/Countertops | | $0 |
| Plumbing | | $0 |
| Electrical | | $0 |
| Heating/AC | | $0 |
| Appliances | | $0 |
| Doors/Trim | | $0 |
| Cleaning | | $0 |
| Other | | $0 |
| | Internal Repair Total: | |
| **External Repairs** | **Comment** | **Total** |
| Roof | | $0 |
| Siding/Trim | | $0 |
| Structural | | $0 |
| Windows/Doors | | $0 |
| Paint | | $0 |
| Foundation | | $0 |
| Garage | | $0 |
| Landscaping | | $0 |
| Fence | | $0 |
| Other | | $0 |
| | External Repair Total: | |
| | Repair Total: | |

# EXHIBIT 8



Subject Front

**9362 Buell St
Downey, CA 90241**



Address



Side

# EXHIBIT 8



Side



Street



Street

# EXHIBIT 8



View across street

**EXHIBIT 8**



**Comparable Sale #1**

9442 Pellet St
Downey, CA 90241
Sale Date: 6/7/2017
Sale Price: $665,000



**Comparable Sale #2**

10526 Pico Vista Rd
Downey, CA 90241
Sale Date: 7/5/2017
Sale Price: $670,000



**Comparable Sale #3**

10244 Woodruff Ave
Downey, CA 90241
Sale Date: 7/10/2017
Sale Price: $719,000

# EXHIBIT 8



**Comparable Listing #1**

10808 Casanes Ave
Downey, CA 90241
Current List: $679,900



**Comparable Listing #2**

9024 Farm St
Downey, CA 90241
Current List: $699,900



**Comparable Listing #3**

9530 Buell
Downey, CA 90241
Current List: $680,000

# EXHIBIT 8

Neither Assurant Solutions nor any of its affiliates, members, managers or controlled names any representation or warranty as to the accuracy or completeness of the information contained in this broker price opinion. You should use good faith efforts in determining that the content of all information to be provided to or obtained by you is accurate. This analysis has been performed by a licensed real estate professional and is intended for the benefit of the addressee only. The Brokers Price Opinion is not to be construed as an appraisal and may not be used as such for any purpose. The purpose of this BPO is to provide an estimate of the probable sales price of the property, utilizing the sales comparison approach methodology and will not be used for loan origination. This opinion may not be used by any party as the primary basis to determine the value of a parcel of real property for a mortgage loan origination, including first and second mortgages, refinances or equity lines of credit. Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is desired, the services of a licensed appraiser must be obtained.

# EXHIBIT 8